Good morning, Your Honors. May it please the Court, my name is Alan Ritchie and I represented Mr. Thomas Weathers at trial and again on appeal. And, Your Honors, I would like to reserve two minutes for rebuttal. As well, Mr. Ness is here to represent Mrs. Weathers and so he will, we've agreed that he will take three minutes, so at this portion I would like to take ten minutes. Your Honors, just briefly, just a brief recitation of some of the facts that occurred is Mr. Weathers owned and operated a number of motels and hotels in southern Washington and in the Portland, Oregon area. In the early 1990s, he was being sued civilly because of some occurrences that there at the motels. A number of those lawsuits also included the United States suing him civilly. And so, in the course of that, about ten years later, he was sued by various corporations in order to protect himself personally and his family and those assets. He did file Form 1040 returns up to the year, for the year, 1996. And that was filed in 1997 after some extensions. In 1998, then he filed a Form 1040X with a statement and then every subsequent year after that he filed what he called a tax statement. He was charged with one count of willful evasion or willful tax evasion or defeating the payment of the tax. It was not assessment, it was a payment. It was alleged in the indictment that the affirmative acts under that was filing the 1040X, filing false statements, and setting up nominees, which were the corporations. These corporations, however, the evidence showed that they were established prior to 1996. Then he was also charged with five counts, counts two through six, under 7203, willful failure to file tax returns for 1998 through 2002. The superseding indictment alleged that the tax loss was between $80,000 and $200,000, that sophisticated means were used, that Mr. Weathers was in an organizer, leader, or manager of the criminal activity, and that he willfully obstructed or impeded the due administration of justice. At sentencing, the sentencing court incorporated what was alleged in the pre-sentence report, said that the tax loss was over $2 million and that it gave the increase for sophisticated means, the organizer or leader, and for willful obstruction, two-point enhancements for each of those. On review, I would like to address two issues, two main issues today, although there are many more covered in the briefs. First of all, is that the government failed to prove all the requirements for a conviction under 7201 and 7203. And second of all, that there were errors by the court in sentencing that went beyond the charges and beyond findings of the jury. First of all, Your Honors, in tax criminal cases, the Supreme Court has established that typically in a criminal case we have what's called ignorance of the law is no excuse. And the Supreme Court, in reviewing that, said that that does not apply to two specific kinds of criminal charges. One would be tax cases and the other would be banking cases. The reason for that is because of the proliferation of the tax statutes and the multitude of them, it would be difficult, the Supreme Court said, for any person to know what their duty was under that. And so in order to soften that impact, Congress required that there be a willfulness. Now, the Supreme Court in Cheek, in looking at their prior decisions, said that in order to prove willfulness, the government must prove that there was a voluntary intentional violation of a known legal duty. But in looking at the specific wording of the statute, and really that's where we begin here, is what do the statutes, the recharges violating say? Now, 7201 says that if a person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, and then says what the penalty would be. 7203 says any person required under this title to pay an estimated tax or tax or required by this title or by regulations made under authority thereof. So the statutes, Congress specifically said that 7201 and 7203 are not imposing the duty themselves. What they are, and it's well recognized that 7201 is in fact the capstone of all the criminal statutes for taxes. But those statutes in and of themselves do not impose a duty. Rather, as Congress pointed out, some other statute requires that. Is there any authority for that proposition that 7201 and 7203 don't impose the duty? Yes. With the statute itself, Congress said any tax imposed by this title. I'm asking, were there any cases that have adopted your interpretation? There's no case that's looked at the statutory wording that I'm aware of. Is that statute in the title? I'm sorry? If the statute you're citing, isn't it also part of the title? It is. So just as a matter of simple statutory construction, why would you need to look at another statute in addition? Because 7201, for example, says any tax imposed by this title. Now, 7201 in and of itself does not impose a tax. 7203 says any person required under this title to make a return, but it doesn't say that you're required to make a return. Isn't that a play on words? 7201 and 7203 impose a duty to pay a tax, a duty to pay a tax that is defined or provided for in the title. So there's a duty to pay the tax, and you look elsewhere to find out the details. Isn't that right? No, Your Honor. Why not? Because Title 26 imposes a pluralthera, a multitude of taxes. There's firearm taxes. There's income taxes. There's gas taxes. There is a multitude of taxes Title 26 imposes. So are you saying that the government had to tell him which particular tax he failed to pay? Yes, Your Honor. That's what 7201 requires. And if you look at a violation of a known legal duty ---- Didn't the Internal Revenue Service send him several notices? They were telling him what taxes he had to pay. They told him several times. Well, if Congress said that ---- Well, no. Just answer my question. Did they not tell him what he had to do? They gave him several notices. I'm not hearing very well. I'm sorry, Your Honor. The Internal Revenue Service sent him several notices. They sent him notices, Your Honor, saying that we have not received payment of your tax and we haven't received your tax returns. Right. Those notices didn't say what statute imposed those taxes or what required it. If we look specifically at the U.S. Supreme Court in Bryan, Bryan said that one of the things that the government has to prove is that for violations of tax laws, we ---- that the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating. Now, this circuit in U.S. v. Hancock said the cases to which Bryan refers are cases in which the Supreme Court read the element of actual knowledge of the law into complex statutes that punish willful failures to perform statutory duties. Well, is it relevant that he'd been paying taxes for many years before he decided to stop paying? Certainly. Is it relevant to the knowledge issue? Certainly. The government hinges everything on that. However, when he filed the 1040X and the attachment to that and in the filing statements, he specifically stated that it could not be inferred or implied because he didn't know what law, he couldn't find any law that imposed that tax or imposed the requirement. Then he's just wrong. He could be, but that's the government's burden to prove, and they have to prove it beyond a reasonable doubt, and they have to prove it under what the Supreme Court has said, actual knowledge of the law that he's accused of violating. There was no evidence of that. Apparently, he was making some effort to conceal his assets. What does that tell us about his knowledge of his duty to pay? Well, certainly the government alleges that that's why he set up corporations, but the evidence showed that the corporations were established prior to that time. That doesn't let him off the hook. You can have a corporation in existence that you then use at different points in its life for different purposes. I didn't quite understand that argument. Well, the government also alleged and filed tax liens against the properties and things that were in his name, so there were still things in his name. Okay. You might want to let your co-counsel. You've kind of eaten into his time. Thank you. Good morning. For the record, my name is Ron Ness. I represent Kathy Weathers. I represented her at trial also. In my brief, I raised one issue, and that's the issue of whether or not the court should have allowed Exhibit 76, which was described as a summary chart, to go back with the jury during their deliberations. My problem then, and my problem still is, I don't believe that was a summary chart based on voluminous writings. I think it was a summary of Agent McConnell's testimony regarding her opinions as to what the net profits would be based on her review of what were voluminous recordings. Well, somebody had to prepare that chart, right? Yes. And she prepared it? She indicated during her testimony that she prepared it in conjunction with the assistant U.S. attorney, yes. On the basis of records in the possession of the government? Yes. So why doesn't that meet the qualifications of it? Because it was a chart that was based upon her opinions, not just a chart of these documents, these voluminous documents show these figures, and this is the final figure. In her testimony, she indicated that she had to estimate figures based on other documents to come up with a net profit, which meant that she, in my opinion, she was testifying as an expert, not just a person who indicated these are the figures from these documents and this is what they show. So that was the problem that I had. Let's assume that you're correct, that this is somewhere between a normal summary chart and an expert chart. There was every opportunity to cross-examine, wasn't there, on the underlying documents and whether or not these figures were an accurate estimate. That was one of the problems. If you read the excerpt of records, I objected to not being provided with the fact that this person was going to be an expert in her curriculum until she died and the proposed testimony as part of the discovery. But I would have had me cross-examined anyhow because Right. But that was my point is that she did get cross-examined on whether these figures had holes in them. Right. And I think the chart was okay during her testimony. The issue is she should have gone back to the jury during their deliberation. Well, then you'd have to have a real question of, I mean, it's now an admitted exhibit. Right. She's testified about an admitted exhibit. And Well, I objected to the admission. I understand. I understand. But it's like other exhibits that are objected to that go in. They might not be taken at face value depending on the testimony. Well, that's within the jury's province as to how they're going to look at exhibits. And that's why the court has to keep control over what is admitted and what isn't. And that's why I objected. So is your objection to the admission of this evidence or to its going to the jury? Both. I objected to the admission, and I objected to it going back to the jury. Is there any authority for the proposition that the judge has some obligation to withhold admitted evidence from the jury's deliberation? Well, once it's admitted, I agree, it goes back to the deliberation room. So then the only issue is whether it should have been admitted. Right. All right. Thank you. Good morning. May it please the Court, counsel. My name is Helen Bruner. I'm here representing the United States today. Let me address Kathy Weathers' appeal very briefly first. In this instance, the chart was admitted into evidence. Counsel did not object to the use of the chart during her testimony. So the jury would have seen it had it not been admitted into evidence, seen it as a demonstrative exhibit in any event, and heard testimony from Ms. McConnell. But in any event, the figures used on the chart were based on voluminous records. Number one, the profits were based on the records that were admitted into evidence related to the business taxes that were paid both to Portland, reported to Portland and to Longview. So those figures were in evidence, those documents. They constituted 172 pages as set forth in the exhibit list. And then the total expenses were based on the tax returns for prior years. Ms. McConnell testified that she looked at the total expenses for the individual hotels as reflected in the prior year tax returns. Again, 192 pages used the same percentage as had been used. She calculated the percentage that the expenses took up. This is in the nature more of an expert. I mean, the sense that an accounting expert decides whether you need to take a percentage, whether you can extrapolate and take last year's and stick them in this column, as opposed to here's a chart that lists income tax paid for the last 25 years, you know, which is an unimpeachable objective fact. So this is like not quite a summary chart, is it? Well, I think it is. I mean, it is a summary chart, but it's a summary of testimony. In the sense that I don't know that really, although counsel for the government at one point was asked whether or not she was testifying as an expert, and her counsel for the government's response was, well, if that's what it takes to lay the foundation. I don't think the government saw this as an expert. And let me explain. The reason for that is she was just merely taking the information from the tax returns, calculating how much, what percentage of the gross receipts were expenditures in the prior tax returns, and then applying that number on the chart. So it was much more of a mathematical calculation, having gone through the prior year's tax returns, than anything else. But in any event, because she was they didn't object really to the testimony, but rather the admissibility of the chart, I think in any event that any error here would be harmless. With respect to Mr. Weather's appeal, let me just go directly to the sufficiency of the evidence argument, and that really is a question of whether or not the government has established willfulness here. I do want to make one point here, and that is with respect to the corporations that were mentioned. Surely systematic corporation, there was evidence in the record that that was incorporated in 1995. However, coral management, which is where the testimony at trial indicated the receipts for these rental receipts for the hotels were deposited, the excerpt of record, so Mr. Weather's own excerpt of record at 39 shows that that was not incorporated until 1998. And with respect to case investments, another account that was used that was not incorporated until 2000, that's excerpt of record at 40. In any event, what has what the evidence shows here is that with respect to count one, the evasion count, Mr. and Mrs. Weathers filed a tax return in 1996. It was one of a series of tax returns that they had filed over 30 years. In that tax return, they themselves self-declared an income tax of $103,117,000 plus penalties. It wasn't until about nine months later that they decide that, no, they're going to zero out their income and suddenly now declare that they have no income. So we start with a self-declared income. And then we the other evidence shows that from that point on, nothing really changes. They're still operating these hotels. They may be putting some of the receipts in corporate accounts. There's nothing wrong necessarily with that, provided, of course, that you are not using this as your own account, which they were. The evidence at trial showed numerous checks being taken from these accounts for personal expenses. It also shows that they filed false statements, for example, on a brokerage account, indicating that they were not U.S. residents or citizens of the United States. Well, in fact, they were. The evidence shows that they were they threatened an individual with lawsuit if he continued to give them 1099s related to income. All of this, and I could go on, shows willfulness on the part of these individuals to that they knew that they owed that tax and they had evaded it. And also, based on the 30 years of filing and really nothing changing, that they knew that they had an obligation to file returns. If the – I know that there's been extensive briefing in this case. I could go on, but if the Court – and I would be happy to answer any questions from the Court, but if there are no questions, I will rest on the brief and ask the Court to affirm. Thank you. You have two minutes for rebuttal. Thank you. One thing that I wasn't able to touch on I want to address, and that was the sentencing. But before that, I'd point that the government only showed, as far as the tax charges and the willfulness regarding accounts that were used, regarding structures that were set up, and regarding forms that were filed. And I would note that, in fairness, all of those things were signed by Mr. Weathers, not by Mrs. Weathers. And the other thing is none of that goes to prove what Brian said, what the Supreme Court said in Brian, that they had to have actual knowledge of the specific provision of the tax code that they're charged with violating. Well, what was Mrs. Weathers' role in all of this? Was she an officer of the corporation? Your Honor, I don't believe that there was any evidence that she was an officer of any of the corporations. There was evidence that, for example, systematic corporation, there were two separate accounts, one that was personal and one that was corporate. And the testimony showed that. She signed two checks, I believe, when her husband told her to sign those to pay The other issue regards sentencing. Now, in the superseding indictment, Mr. Weathers was charged with a tax loss of $80,000 to $200,000. However, at sentencing, the court, in adopting what was put in the pre-sentence report, was that the tax loss was actually over $2 million. And he was sentenced, according to that, there was absolutely no evidence or nothing to apprise the defendant that that's what he would be sentenced of. And so he was substantially prejudiced by that amount. Further, the jury did not make any of the other findings of sophisticated means, organized leader, any of that. And so he was, although it was alleged in the superseding indictment, that was not put to the jury for a finding. And so, again, he was substantially prejudiced by that. I believe that under the Supreme Court guidelines of Apprendi and Blakely, that the jury was required to make a finding. So, Your Honors, my time's out, and I apologize. We would respectfully request that at least it be remanded for resentencing, that we believe that the evidence was insufficient, and it should be remanded for dismissal. Thank you. Thank you. The case just argued, United States v. Weathers, is submitted. Thank you to all counsel.
judges: B. Fletcher, McKeown, Schwarzer